I am pleased to report my name is Dan Goldberg and I represent Terreall McDaniel on this appeal. Because there are four issues I'd like to give this court a brief roadmap of the issues I intend to address in this oral argument. That's primarily issues one and three. Of course if there are any questions this court has on any of the issues I'll address them at the time. Turning first to issue three. District Court erred in sentencing Mr. McDaniel to the ACCA sentence because the government failed to satisfy its burden of proof that Mr. McDaniel had three qualifying private convictions that occurred on separate occasions. Government concedes on appeal that there is quote a discrepancy in its ACCA evidence. And the discrepancies in the judgment, the Missouri State Court judgment, it states quite clearly that two of them occurred on the same day, January 24, 2002. Now to ameliorate this discrepancy or attempt to ameliorate this discrepancy the government introduced two exhibits. One is an information where it appears that Mr. McDaniel's then trial counsel tried to strike through the date and change one of the dates so there would be two different dates. You're saying this is the prosecutor striking through it? I'm sorry, Mr. McDaniel's then trial counsel. His Missouri State public defender at the time. It's marking on the information? Yes, sir, I believe so. Well, the prosecutor does that sometimes but I've not heard a defense counsel doing it. Is there any explanation? I think so and that comes in from the other exhibit. Okay, go ahead, proceed. At the guilty plea hearing in 2002, the trial counsel moved to amend the information to change the date. And so the government maintains these two exhibits ameliorate the problem. I don't think they do. I'm still a little bit at sea. You say that the information actually was marked on, am I following what you're saying, by the defense counsel? Yes, your Honor. Okay, now does the record reflect how that happened because that's not normal? No, it's not. I think the record reflects, I don't know if it was done contemporaneously at the guilty plea, but I think it could be plausible to infer that that's when it happened either before or during because I think a fair assessment is that his attorney was intent on changing the date. His attorney wanted to change the date. Did the prosecutor's initials appear near it or something? No, your Honor. But the prosecutor was probably there when it happened? Yes, your Honor. Okay, proceed. So in looking at this evidence, the question is, does this mean under Mathis Taylor's demand for cert? Because I think that's the government's burden of proof, and I don't think it does for a couple of reasons. The district court, concluding that these two convictions occurred on two different dates, said that it found most convincing Mr. McDaniel's testimony at the guilty plea in 2007. But the problem with this, I think, is that in the categorical analysis, the district court ought not be making these weighing decisions, and I think that's what Mathis stands for, that these types of facts shouldn't haunt Mr. McDaniel many years later because he had no basis to dispute that in 2002. Well, there's a more basic problem here, unless I'm misreading the facts. So you have a situation where the charging document, and we've talked about that a little bit already, the criminal judgment both mark them down as having committed them on the same day. Is that right? I mean, the Shepard document seemed to say that they happened on January 24th, but correct me if I'm wrong. The judgment certainly says that, and I'm sorry, what was the other document? The charging document, I thought, also said that, and then it was marked up. Was it changed to January 28th, or was it? That's correct, Your Honor. Okay, but it was originally January 24th, right? Correct, Your Honor. Which was the same day. And so one of the problems I'm having here is, you know, I think it's still an open question in this circuit whether you can use Shepard documents at all in the different occasions determination. And, of course, I've written that we shouldn't use Shepard documents at all because this is at heart a factual finding. But my point is, what do we do here when the Shepard documents conflict with each other? This is a very unusual circumstance, whether it's sloppiness, whatever the case may be, but what do we do in this circumstance? I think it's a great question, Your Honor. I think what we also should look at is Missouri Supreme Court case law and how judgments are referred to in that court. And there's a strong presumption that the judgment's correct and that there aren't Scribner's errors. And so I think we need to get deference to that. I think what's also unusual about the circumstances is that there was a great deal of confusion in 2002, I think, at this guilty plea hearing. You have the trial counsel representing eight different defendants simultaneously. You have the prosecutor, frankly, confused as to who's pleading guilty. So it's a situation that's ripe for confusion. And for those reasons, I think we should defer to the judgment. And I think you're right to stress I don't think there's any Eighth Circuit finding case law on this issue, but I think there is a helpful case from the Fourth Circuit, obviously not finding, called Spann. And in that case, the Fourth Circuit determined that it was not a permissible view of the evidence to disregard the dates in the judgment. And so for all those reasons, I respectfully submit that this ACCA sentence should be reversed. Turning next to Issue 1. The District Court erred in admitting into evidence the expert... Counsel, just one last question on that point. Yes, sir. Is it undisputed that the crimes that are being discussed occurred in different locations and involved different victims, though there may be some dispute about whether they happened on the same day? You know, I think the record below, to my knowledge, is silent on that. I don't think the government put in other evidence for the District Court below about, you know, that there are two drug offenses that occurred on the same day. I don't think there's anything more saying, you know, where those occurred or when those occurred, to the best of my knowledge. To follow up on the Chief's question, do the Shepard documents, and in particular the charging document, do those in the earlier prosecution, do they address the Chief's questions? In other words, they say this offense happened at a gas station at 9 a.m. and then say that, you know, the later offense happened somewhere else at 5 p.m. Do you know? I mean, to the extent we can use Shepard documents in this way. I think they both state that it was in Jackson County, and that's it. That's it. Now, the initials D.J. that are on the front of the information, do you know what they are? Do you know where they are up in the middle of the? Yeah, I think it's on the D.J. I don't know who D.J. is. Is D.J. a defense counsel? D.S. David Suroff, who I know, that was his defense counsel. So maybe that's D.S. It may be. So he may be initialing the change that's at the bottom of the page? Yeah, no, I think that may be. Because it doesn't match any other initials in the case. Right. So that may be absolutely correct, Your Honor. So what's the effect of the plea transcript in terms of the statements made by the defendant? Right. I think that those statements, I mean, I don't want to discount them because it's the defendant stating that these events occurred on different dates. But in Mathis, I think that's pretty apropos of the analysis and the majority opinion. It says, well, sometimes defendants don't have a basis to dispute things because it doesn't matter at all to them. And it didn't matter to Mr. McDaniel in 2002. And certainly Mr. McDaniel's trial counsel wouldn't have done something in 2002 that he thought later in life would have really harmed him. So I think these are kind of real-world facts that the categorical analysis really needs to disregard, especially under the Sixth Amendment, where now you have a district court judge trying to weigh facts many years later in a way that I don't think the district court should. And the record's clear that he was under oath as is typical at this stage of the proceeding in Missouri State Court. I think so, Your Honor. Proceed. Turning to Issue 1, the district court erred in admitting the expert testimony of Detective Stanzi because the district court failed to make a proper reliability determination prior to its admission. The government's position at trial was unambiguous that Daubert doesn't apply in bench trials. And I think the government cites a lot of civil case law that stands for that proposition. I just don't know how helpful that case law is. What about the Evans case? Which case, Your Honor? Evans. I believe it's Evans and the other side's brief that they stress is a criminal case. Right. And does say about the same thing. Right. I think the one thing to my recognition that's different about Evans is that you have the district court making some sort of reliability determination and engaging those standards. And I think what's concerning here is that I'll concede that it's much more relaxed when it's a bench trial. You don't need to have that Daubert hearing or trial. You can have it simultaneously. But at some point, I think the judge needs to wear two hats. The first hat is the Daubert hat of is this information reliable? And if we don't have that, any expert can get on the stand, or any expert, I should put in quote marks, and can testify to anything. But we need to have some sort of reliability determination. Can a judge reserve that until the judge has heard all the evidence in a judge-alone trial? Yes, the judge heard all the evidence. No, I'm really asking a question. This is a state court procedure for sure, but I'm asking you if you think it's acceptable in federal court to say, well, I'm going to reserve all rulings on this kind of evidence or that kind of evidence or this kind of expert until I've heard all the evidence in the case? Absolutely. Okay, go ahead. I think we wouldn't have a problem here had the district court came back to this issue and said, by the way, I'm making a credibility. Okay, and you think then they have to come back to it expressly, not implicitly? I think so. Because often in state court, they don't come back. Right. Trust me. I think here, I think 702 requires some sort of reliability determination, engaging that standard since it was passed by Congress. And without that, there's just a danger of putting up witnesses and they get to opine on anything they want to about it. I can't resist telling you it's not really passed by Congress. It's not passed by Congress. Right, absolutely. No, I'm just kidding. Just for information. Go ahead. No, I think you're absolutely right. You know, one of the questions I have is, even if we didn't have all these cases on Daubert and not being strictly enforced in a bench trial, I mean, isn't the alternative that this is harmless? Because the district judge is not going to take into account, I mean, we presume they're not going to take into account something they find unreliable. We can implicitly conclude that the district judge is doing some sort of reliability analysis in his or her head, even if he or she doesn't expressly say it. Right. I think there is the potential to make that assumption. But I think, I guess I go back to my earlier arguments, that we really want to have a record to safeguard. And, again, I'm concerned that if I were to leave anything with you here, it's the notion that witnesses would get up on the stand and hear, I think, it's the prejudices. In the findings and conclusions of finding Mr. McDaniel guilty, the district court seems to adopt the testimony of the expert wholesale and uses that as a substitute for weighing the evidence herself and finds the witness credible. But that's a factual finding, right? That's a different hack. That is a weighing of the evidence. I think the reliability of the evidence is an altogether different function the judge needs to make and put on that different hat and engage that analysis. So this court has something to review. Is that argument, though, weakened by the fact that this really isn't scientific evidence, that you're testing the reliability? I realize completely that the Supreme Court has extended the Dobrin analysis to all expert testimony. But if you were in state court, for example, you wouldn't be doing it unless it was scientific evidence. So I wonder if the fact that we just have plain old expert testimony makes the harmlessness argument stronger. I think it's a fair point. I'm going to have to concede that I think Detective Stanzi had the potential to be an expert witness because he had credentials. But what's troubling is, again, the silence in the record. Judge Ketchmark, I know the credibles in the adjective, but she ends the sentence with credible testimony about his experience investigating and his knowledge and expertise, magic word, expertise. Is that close enough? I may be mincing words, but to me credibility is not the word engaged. It's rule 702. Yeah, that's the front of the sentence. I get it. Does she come out okay by the end of that, that very sentence? My humble opinion is that she doesn't quite get over the hump. Had she said reliable, I think there wouldn't be a problem here. But I think without that, we're guessing. And, I mean, obviously the government's burden here was to prove him guilty beyond a reasonable doubt in a criminal trial. And so these kind of civil standards where we relax things. She uses the same language about the forensic chemist and the crime lab specialist, you know what I'm referring to. I do. Okay. So, but you believe it's, I got your argument. And so she's using the same word, yeah. I think that helps us because it shows she's just wearing that credibility hat. Yeah. Unless there's other questions, I'd like to reserve my five seconds. Super funnel. Mr. Hurst. Hey, police, the court. Good morning. Ben Hurst for the United States. I'd like to start, I think, with the same place with the, where Mr. Goldberg started on this issue of the ACCA predicate offenses. And I think the biggest point for me when I look at this record is that everyone who was there at the plea hearing agreed on what the right date was. So defense counsel suggests to the court and to the prosecutor, judge, I think for count three this information needs to be amended to reflect an occurrence date of January 28th, 2002. You're talking about the original trial or the proceeding in federal court? I'm talking about the proceeding in state court. That is the ACCA predicate. The issue of whether all of them occurred. I understand that, but what are you reading? Are you reading the proceeding from federal court when they're discussing the ACCA or state court transcripts? Your Honor, I'm reading a plea transcript from state court. Okay. Thank you. It's in the addendum at A7. Thank you. So this is defense counsel. Judge, I think for count three the information needs to be amended to reflect an occurrence date of January 28th, 2002. Mr. Knight, that's the prosecutor. He says, I don't know who we're talking about. This is McDaniel. And then the court says, because they both say the 24th, is that it? And the defense counsel again. And the discovery shows it was on the 28th, count two. Mr. Knight, the prosecutor. That's right, Your Honor. The court. All right. The information will be amended to reflect that fact. Thank you, Judge. And then there's a colloquy here, the court. So four days later on January 28th, did you sell crack cocaine again? Defendant McDaniel, yes. So I understand the issue that the judgment definitely doesn't say that. The judgment, unlike the judgment in Spann, the case on which the appellant relies, was actually handwritten. And that was a point that the court in Spann relied on when they said, well, we're going to follow the judgment in this case. Here it was handwritten. It definitely doesn't agree with what occurred at the plea hearing. But I do think that the plea hearing and the amendment to the charging document and the fact that everyone who was there, defense counsel, the defendant, the prosecutor, and the court, were all in agreement about what the correct date was. You know, what I'm having is, you know, there's still a very active, you know, I think Levering left this open. There's still a very active debate about whether to do Shepard documents or not Shepard documents. And I'm not sure where plea colloquies fall, at least under Supreme Court precedent, which is to say that, you know, the Supreme Court talks about peeking at charging documents and the judgment to figure out, for example, and under the categorical approach to figure out which subdivision a defendant was convicted under. I mean, does that extend to the plea colloquy as well, in particular facts that come out in the plea colloquy that may conflict with other Shepard documents? I think so, Your Honor. And I'm looking, I don't have the Shepard case in front of me, but I'm looking at Spann. And in the case of the 924C predicate offenses, the 924E, I'm sorry, it's quoting Spann saying, these Shepard-approved sources, unlike police reports, properly omit the inquiry of sentencing courts to conclusive judicial records. And what it's talking about here includes charging document, the plea agreement, plea transcript between the judge and the defendant, and this is a quote from Shepard, in which the factual basis for the plea was confirmed by the defendant or to some comparable judicial record of this information. So the Fourth Circuit added the plea colloquy part of that? Is that what you're saying, counsel? No, Your Honor. As I read it, the Fourth Circuit is quoting... Even on the plea colloquy part? No, I misspoke. It says plea transcript, the Fourth Circuit added this, between a judge and the defendant. So the plea transcript is the Fourth Circuit talking? I think that's right, Your Honor. Okay. Yes. But I think what they're, this case and what they're referring to... Okay, what's the best Eighth Circuit case or a Supreme Court case on we can look at a plea transcript, just for starters? I don't have an Eighth Circuit case for you, Your Honor. I do think that Shepard gets us there, and I think that is why... Okay, what are the words in Shepard? Can you point to words in Shepard? I can't point to them off the top of my head, Your Honor. And you actually have two... No, I'm done. You actually have two problems here. One is, is I'm not sure the plea transcript, plea colloquy is a Shepard document. It may well be. You might be right. But even if you got past that, you have a conflict on the Shepard documents. And, you know, I've written that I don't even think we should be doing Shepard on this because it's a deeply factual inquiry that requires a lot of factual findings by the district court. But even if we do, you know, it's kind of like there's a genuine issue of material fact, right? He's now coming back and saying, well, I didn't care. I didn't care what I said at the plea colloquy because it didn't matter. 24th, 28th, I'm still convicted. He wasn't thinking about ACCA at that time. He was thinking about pleading to the crime. So he didn't really care. And then you have the judgment saying something different. You have the information saying one thing, and they handwrite a change in it. It seems to me that there's a conflict. And you might be right, that everyone agreed on it. But you sort of have a genuine issue of material fact about when it actually happened, at least now, now that he's pointing at different documents. And what do we do with that? Your Honor, I think that if you look at the Spann case on which the appellant is relying here, that court said, well, we're not going to look at those other things because the ambiguity is rife and there's just too much of a mess. And so that court said, okay, fine, we're going to go with the judgment. That's the reliable document. But I don't think that analysis applies here, because I think that here what we have is one document that disagrees. At the end of the – or based on the evidence that we put forward to – on the sentencing here, we have one document, the judgment, where there's a handwritten judgment that doesn't agree. But then everything else explains the disagreement. So where the information originally said the 24th, well, it's clear from the plea transcript that that was a scrivener's error. I think the court can read from that and say, okay, look, the judgment, yes, it doesn't have three different dates on it, but the plea transcript explains why that was an erroneous information that clearly just didn't get transferred over to the judgment when that was handwritten. So I think that to the extent that Spann comes out a different way, I think this is a distinguishable case from our perspective. Do you think Spann's got the right standard? Step back, because I heard what you tried to distinguish it, but does Spann have the right standard? I think – I think that's right, Your Honor. I think, as I see it, discrepancies in these records, such as different dates of the same offense, do not upend the trial court's sound conclusion when there's additional evidence to indicate the date is likely – I'm sorry, the erroneous date is likely a scrivener's error. That seems like the right – that seems like the right comment. Is riddled with ambiguity muddled, is that the kind of standard that's in Spann or not? Riddled with strikethroughs, bespeaks of unreliability, do you think that's the Spann standard? Correct me. I'm figuring this out, obviously. I don't – I don't have a reason to disagree with the standard that Spann put together. I just don't think that it applies on our facts, Your Honor. And I realize, I think you didn't write the brief, but I notice there's no Missouri law in here at all. Your opponent had some Missouri law. Have you checked out the Missouri law on the final judgment and the extent to which it controls everything or not? I have not, Your Honor. And that's – but I don't think that the validity of the Shepard documents and what the date is is necessarily bound up in the judgment. We have to acknowledge that judgments are going to contain scrivener's errors at points. Is there anything – to go back to the Chief's earlier question, is there anything about the where and the substantive continuity prongs of our test for different occasions? In other words, I think the information – from what I can tell, there's nothing that says they happen in different places or anything like that. But maybe I'm wrong about that. Maybe the government has a different view. I don't – the thing I can tell you about the information, Your Honor, I looked at it while you all were discussing it. We have the – in the county of Jackson, it's just jurisdictional. It doesn't tell us exactly what happened. Sold cocaine to Detective Morales in both counts. So that clears up a factual dispute or a question that you had. But what I have here is what appears to be perhaps the defense counsel's initials over the corrected date. So on the who, he sold to the same person twice. That's what the information says, Your Honor. And so if we take – if we have a dispute about the when, then it's quite possibly these things could have happened back-to-back. I mean, it's leaving aside – leaving aside the date point. We just don't have a lot of information. These happen in different places or a different – so, okay, that helps. That's correct, Your Honor. Now, do you agree that – how do we know the defense counsel was the one who marked that at the bottom of the page? Other than the fact that the initials match, Your Honor. Yeah, the initials are a long way away, though, on the page. Well, that's true. Now, what we do have is we have – even if the defense counsel wasn't the one who There are no other questions on the third issue. I will spend a little bit of time talking about the Daubert issue in this case. I think this case kind of starts and maybe even ends with a series of cases from this circuit admitting the testimony of officers to testify about the modus operandi of drug traffickers subject to Rule 702 and Daubert. I think that there's maybe a dispute between us about how and when the court has to perform its gatekeeping function. Our position is that the court can perform the gatekeeping function in a bench trial the same time it's performing its evidence-binding function. You think it can be implicit? You heard our discussion. Yes, Your Honor. Moreover, I think that there's actually more than implicit here. Because not only did the district court – the way this played out was that Detective Stinson came up. He gave his testimony about his experience in working in the field, 22 years as an officer, two and a half years undercover, 500 drug buys, that sort of thing. And then there was a motion to exclude that because it wasn't scientific evidence. It didn't meet the Daubert standard for scientific evidence. And the judge overruled that. I think at that point it's not just implied by her findings that she found him credible and reliable in meeting the standard of 702. Wait, she doesn't use the term reliable, does she? That's right, Your Honor. She doesn't. She was credible several times. That's right. But I think it's also – Five or six times in a row. Go ahead. I think that it's also a matter of – the court is presumed to know what the law is and it's only to consider admissible evidence. And that she found – that she overruled the Daubert motion, continued to permit him to testify about his opinion, and then here in her findings testify – or, excuse me, wrote that she gave – he gave credible testimony regarding his opinion about the things on which he gave testimony that was based on his experience. Now, the chemist and the supervisor, lab supervisor, who also testified, were their expert credentials stipulated to? Was nothing said about them? Was there no challenge? Because she uses the same words for all of them in the same order. I don't recall exactly what the testimony was, but I do believe there was not an objection. I'll say one other thing about – or maybe two other points about – the issue that you were talking about, Your Honor. One thing to note about this is the inconsistency in the defendant's position, both that in trying to distinguish Schwartz, a case where the court said, well, the jury doesn't know about drug dealing, so we have to – we can allow this officer testimony about modus operandi. And the defendant says, well, that is not at issue here because there's no jurors. The implication being the judges do know about drug dealing, but at the same time says that the court could not have reached this conclusion without relying on Detective Stancy's testimony. I don't think those things are consistent. I think that if it's true that the – and I don't think this is what the law says, but if it's true that there's no need for officers who are testifying about modus operandi to be experts, then it's – and the court can reach those conclusions without the expert testimony, then it also is likely harmless in this case to admit it since she could have gotten to that conclusion without his help. The other point I'll make is that when you consider the way the gatekeeping and fact-finding functions play out together in the bench trial context or another fact – other, like, instances where the court is finding facts, such as class certification, the defendant had an opportunity to put before the court all of the credibility or all of the reliability responses or examination that he wanted to do. He could have just done that either by voir dire in the witness, which didn't happen here, or by cross-examination, which also didn't happen here. So Detective Stancy got done testifying. There was an opportunity to cross-examine him and poke holes in his credibility that the judge could have – or, I'm sorry, reliability, that the judge could have then considered at the end of the testimony or when she was deliberating to find that he was, in fact, not reliable. So I think those things – I think that function and the fact it wasn't cross-examination in this case, it does play somewhat in our favor. If there are no other questions, I'll take a seat. Thank you all. I see none. If I could have a second more, I guess I would address Issue 4 briefly, and that pertains to the stacking of the 924C convictions. As this Court's aware, that greatly enhanced his punishment. I think the First Step Act makes this a very timely issue. Is that before the Supreme Court set for conference February 22? Riviera-Ruperto First Circuit? You're right. I think you're right. So you may get an answer on that. Yeah, that would be great. Well, I should ask a question. Will that resolve that issue for you, what the Supreme Court does with that case? Well, I think the one thing that's interesting is that the time – I was kind of looking for a yes or no. And if you don't know, you can say that too. I would say maybe not no because – Okay. Thank you. Thank you for your time. Thank you, Mr. Goldberg. Thank you also, Mr. Hurst. We appreciate the argument you provided to the Court. And let me say to all counsel present here today, thank you for accommodating the Court's desire to move tomorrow's cases to today and conclude the hearings in a more expeditious manner. We appreciate your help in that regard. Thank you. You may be excused.